IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANITA SALDANA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 10 C 1609 |
| v. | ) |
| | ) Magistrate Judge Nan R. Nolan |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Anita Saldana filed this action seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits under Title II of the Social Security Act ("Act"). 42 U.S.C. §§ 416, 423(d), 1381a. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and have filed cross-motions for summary judgment. For the reasons stated below, the Commissioner's decision is affirmed.

### I. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") under Titles II and XVI of the Act, a claimant must establish that he or she is disabled within the meaning of the Act.[1] *York v. Massanari*, 155 F. Supp. 2d

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq*. The SSI regulations are virtually identical to the DIB regulations

973, 977 (N.D. Ill. 2001); *Keener v. Astrue*, 2008 WL 687132, at *1 (S.D. Ill. 2008). A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, the ALJ conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his former occupation?
5. Is the claimant unable to perform any other work?

*See* 20 C.F.R. §§ 404.1509, 404.1520, 416.909, 416.920; *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

and are set forth at 20 C.F.R. § 416.901 *et seq*.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB on May 18, 2007, alleging she became disabled on April 30, 1997, due to hypertension, Bell's palsy,[2] diabetes, depression, and a left eye problem. (R. at 8, 46, 59, 89–96.) The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 8, 45–46, 65.)

On February 19, 2009, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge ("ALJ"). (R. at 8, 13–44.) The ALJ also heard testimony from James M. McKenna, M.D., a medical expert ("ME") and Cheryl R. Hoiseth, a vocational expert ("VE").[3] (*Id.* at 8, 32–44, 83, 85.)

The ALJ denied Plaintiff's request for benefits on March 10, 2009. (R. at 8–12.) Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity during the period from her alleged onset date of April 30, 1997, through her date last insured of March 31, 2003. (*Id.* at 10.) At step two, the ALJ found that while Plaintiff had the following medically determinable impairments: ankle fracture, diabetes and carpal tunnel syndrome, she did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months. (*Id.* at 10–12.)[4]

---

[2] Bell's palsy is "a dysfunction of cranial nerve VII (the facial nerve) that results in inability to control facial muscles on the affected side." <http://en.wikipedia.org/wiki/Bell's_palsy>

[3] The hearing transcript inexplicably refers to the VE as "Ms. Bice."

[4] Alternatively, the ALJ concluded that even if Plaintiff's ankle fracture was a severe

Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (R. at 12.) The Appeals Council denied Plaintiff's request for review on January 5, 2010 (*id.* at 1–3), and Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner.

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Act. *See* 42 U.S.C. § 405(g). In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (internal citation and brackets omitted). The Court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate

---

impairment, she was able to perform her past relevant work. (R. at 12.)

and logical bridge from the evidence to his conclusion." *Young,* 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. DISCUSSION

Plaintiff contends that in finding her ankle injury nonsevere, the ALJ failed to follow the "slight abnormality" standard in Social Security Ruling ("SSR")[5] 96-3p. (Mot. 8–10.) She asserts that the ALJ failed to consider her hearing testimony as to her ankle pain and the limitations related thereto. (*Id.* 10.)

### A. Applicable Law

At Step two, the burden is on the plaintiff to establish that he or she has an impairment that is severe. *Castile v. Astrue,* 617 F.3d 923, 926 (7th Cir. 2010). "The Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." SSR 96-4p, at *1. "Although the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms,

---

[5] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel,* 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue,* 559 F.3d 736, 744 (7th Cir. 2009).

and laboratory findings, the regulations further provide that under no circumstances may the existence of an impairment be established on the basis of symptoms alone." *Id.* (footnote omitted). Thus, "medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28, at *4; *see* SSR 96-4p, at *1 ("Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.").

"The presence of a condition or impairment is necessary to a finding for a plaintiff at Step 2, but is not alone sufficient. A plaintiff must further show that the impairment met the severity standard." *Boyd v. Astrue*, 2009 WL 5149136, at *9 (N.D. Ill. Dec. 28, 2009). A severe impairment is an "impairment or combination of impairments which significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a); *see Castile*, 617 F.3d at 926. Basic work activities are "the abilities and aptitudes necessary to do most jobs," including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b); *see Orr v. Astrue*, 2010 WL 4192831, at *9 (N.D. Ill. Oct.18, 2010). Step two has been characterized as a *de minimis* screening device that disposes of groundless claims. *Johnson v. Sullivan*, 922 F.2d 346, 347 (7th Cir. 1990). "[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more

than a minimal effect on the ability to do basic work activities." SSR 96-3p, at *1. "If a claimant is unable to show that he has a medically severe impairment, he is not eligible for disability benefits." *Bowen v. Yuckert*, 482 U.S. 137, 148 (1987).

**B. The Relevant Medical Evidence**

On December 5, 2000, Plaintiff was admitted to Provena Mercy Center after falling and injuring her left ankle. (R. at 208.) X-rays revealed a minimally displaced trimalleolar fracture of her left ankle. (*Id.*) The next day, she underwent an open reduction, internal fixation in the distal fibula, and a plate was applied. (*Id.* at 209–10.) The post-operation x-ray indicated excellent position of the plate and screws, with no complications. (*Id.* at 210) ("Postoperative changes without evidence of complications. It appears that there is virtually anatomical position and alignment.").

On August 29, 2001, after Plaintiff complained of painful hardware, the plate and eight screws were clinically removed from her ankle. (R. at 219–20, 222.) During the surgical procedure, Plaintiff's fracture was found to be "completely healed." (*Id.* at 220) ("Intraoperatively a mortise view of the ankle revealed that all hardware was removed from the ankle and the fracture was completely healed, there was no evidence of any new fractures."). The post-operation x-ray demonstrated that Plaintiff's fracture had healed completely and her ankle was normal. (*Id.* at 221) ("Previously demonstrated fractures have healed. The ankle mortise is normal.").

On July 9, 2007, Francis Vincent, M.D., a nonexamining state-agency consultant, reviewed Plaintiff's records and concluded there was insufficient medical evidence of any impairments. (R. at 338–40.) On October 4, 2007, Terry Travis, another nonexamining state-agency consultant, affirmed Dr. Vincent's conclusions. (*Id.* at 341–43.)

At her evidentiary hearing, Plaintiff testified that she experienced pain in her ankle following her surgery. (R. at 18, 24.) She asserted that she could stand for only 20 minutes and could walk no more than half a block without pain. (*Id.* at 25.)

The ME testified that Plaintiff's ankle fracture required surgery but that the post-operation x-ray "showed good position of the components with the fixation plates and screws." (R. at 35) (citation omitted). He observed that after her hardware was removed in August 2001, Plaintiff's fracture had "healed" and her ankle was "normal." (*Id.* at 36.) Although the ME acknowledged that the surgeries to repair the fracture and remove the hardware were "traumatic" events, he reiterated that Plaintiff's ankle healed with normal, anatomical alignment. (*Id.* at 40–41.) Following her surgeries, Plaintiff's ankle was "as good as new"; "it's as if [she] never had a fracture." (*Id.* at 40.) Because Plaintiff's ankle impairment lasted less than 12 months, the ME concluded that there was no medical evidence of any severe impairment. (*Id.* at 38, 40.)

## C. Analysis

In his decision, the ALJ adopted the ME's assessment that Plaintiff did not have any severe impairment:

> [The ME] explained that a fracture that heals with normal alignment six weeks later is like you never had a fracture. Durationally, the fracture did not last and a healed fracture with normal alignment is as good as new. Therefore, [the ME] considers it not to be a severe impairment. I agree with his finding and do not find that [Plaintiff] had any severe impairment prior to the date last insured.

(R. at 11–12.) The parties agree with the ALJ's determination that Plaintiff's ankle fracture was a medically determinable impairment. (Mot. 8–10; Resp. 5–6; *see* R. at 10.) Plaintiff, however, asserts that the ALJ erred in finding her ankle impairment nonsevere. (Mot. 8–10.)[6] The Court disagrees.

In order for an impairment to be severe, it must continue for at least 12 months. 20 C.F.R. § 404.1509; SSR 96-4p, at *1. Here, the medical evidence demonstrates that Plaintiff's ankle impairment lasted less than nine months. On December 5, 2000, Plaintiff fractured her ankle after she tripped and fell while shopping. (R. at 205, 208.) The next day, she underwent surgery, and a plate and screws were attached to her ankle. (*Id.* at 209–10.) A post-operation x-ray indicated excellent position of the plate and screws, with no complications. (*Id.* at 210.) Less than nine months later, on August 29, 2001, after Plaintiff complained of painful hardware, the plate and screws were successfully removed. (*Id.* at 219–20, 222.) A post-operation x-ray found that Plaintiff's fracture had healed completely and her ankle was normal. (*Id.* at 221; *see id.* at 40–41 (ME finding that Plaintiff's ankle had healed with normal, anatomical alignment).) In fact, after the plate and screws

---

[6] While the ALJ found that Plaintiff's ankle fracture, diabetes and carpal tunnel syndrome were all medically determinable impairments (R. at 10), Plaintiff disputes only whether her ankle impairment was severe. (Mot. 8–10.) Further, she does not contend that the combination of impairments was severe.

were removed, Plaintiff's ankle was "as good as new," "as if [she] never had a fracture." (*Id.* at 40.)

There is no medical evidence of any ankle impairment after the plate and screws were removed on August 29, 2001. During an examination several months after her hardware was removed, Plaintiff was observed to be "ambulating without any problems." (R. at 226.) Indeed, Plaintiff's counsel acknowledged at the evidentiary hearing that there is nothing in the medical file mentioning Plaintiff's ankle subsequent to the hardware being removed:

> ALJ: Is there anything in the file at all, after the hardware was removed, dealing with the ankle?
> Atty: No.
> ALJ: And when there was subsequent admissions and the complaints and everything else, [she] never mentioned the ankle, is that right?
> Atty: That's correct.

(*Id.* at 42–43.)

Nevertheless, Plaintiff contends that the ALJ should have considered her evidentiary hearing testimony before determining whether her ankle impairment was severe. (Mot. 10; Reply 2.) However, without any medical evidence that Plaintiff had an ankle impairment after August 29, 2001, Plaintiff's testimony is simply insufficient to establish a severe impairment. *See Jaquez v. Barnhart*, 2005 WL 2399804, at *6 (N.D. Ill. Sept. 1, 2005) ("The claimant's testimony alone is not enough to establish the existence of a medically determinable physical or mental impairment."); 20 C.F.R. § 404.1528(a) ("Symptoms are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is

a physical or mental impairment."); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment . . . ."). Once the ALJ concluded that Plaintiff had failed to prove that her ankle impairment was of sufficient duration, the ALJ was not required to consider Plaintiff's testimony concerning her subjective symptoms "because that testimony by itself could not support a finding of disability." *Jacquez*, 2005 WL 2399804, at *6; *see Cook v. Massanari*, 2001 WL 755145, at *7 (N.D. Ill. July 2, 2001) (recognizing that the ALJ may begin looking at the claimant's symptoms only after the initial finding of an objectively verifiable abnormality is made); SSR 96-4p, at *1 ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment."); SSR 96-3p, at *2 ("Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably

be expected to produce the alleged symptom(s)."); *accord* SSR 96-7p, at *1; *see also* SSR 85-28, at *4 ("At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.").

The ALJ's decision is affirmed.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [Doc. 13] is **DENIED**, and Defendant's Cross-Motion for Summary Judgment [Doc. 17] is **GRANTED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is affirmed.

E N T E R:

Dated: March 21, 2011

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge